**Kenneth JONES, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2009–SC–000221–MR.**

Supreme Court of Kentucky.

Sept. 22, 2011.

Rehearing Denied Dec. 22, 2011.

Erin Hoffman Yang, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Jason Bradley Moore, Assistant Attorney General, Office of Criminal Appeals, Attorney General's Office, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice
SCHRODER.

This is a matter of right appeal in a case wherein Appellant was convicted of murder pursuant to a guilty but mentally ill verdict. Appellant's primary arguments are that the trial court erred in giving a "no duty to retreat" instruction regarding the victim and in refusing to admit evidence that Appellant believed he was being poisoned in jail. We hold that it was reversible error to give the "no duty to retreat" instruction regarding the victim because KRS 503.055(3) was not intended to apply to the victim's conduct, but only to a defendant's conduct relative to his or her claim of self-defense. Thus, we reverse and remand for retrial or for further proceedings consistent with this opinion.

In 2006, Kenneth Jones, a retired Navy veteran, was living by himself in a trailer. Some time that year, Jones, who was 65 years old at the time, began to believe that his trailer was being tampered with and that toxic chemicals were being pumped into it. Acting on this belief, Jones began taking measures to protect himself and his trailer from this perceived threat. Jones ran an electrified cattle fence around his trailer, chained and padlocked his front door, placed razor wire around the roof, put padlocks on his cabinets and refrigerator, wrapped barbed wire around his A/C unit and antennae, installed security cameras and motion detectors around the property, and hung a sign on his back door warning, "danger, unplug electrocution." Neighbors testified to seeing Jones patrolling his property from his rooftop in a bullet-proof vest. One neighbor testified that Jones sometimes shot his gun into the night.

Jones also began repeatedly calling the Kentucky State Police and the Carlisle County Sheriff's Department to report the alleged poisoning. Jones also sought help from the Environmental Protection Agency and even hired a private investigator to search his property for bugging devices and evidence of the poisonings. The investigator found no bugging devices, no signs of break-ins, and no evidence of any chemical assault.

At some point, Jones began to suspect that a neighbor, Perry Warren, was the person who was trying to poison him. On March 3, 2008, Jones was sitting in his truck during a power outage and saw Warren driving home. According to Jones, he followed Warren to his (Warren's) house because he wanted to talk about the chemicals and some trash Jones believed that Warren had left on his property. Jones, who was armed with a handgun, stopped his truck on Warren's driveway a few feet from the concrete pad at Warren's residence. Jones testified that he got out of his truck, put his hands where Warren could see them, and told Warren they needed to talk. According to Jones, Warren got irate and demanded that Jones leave. Jones, still with his hands in the air, again told Warren he only wanted a minute to talk.

Jones testified that Warren then drew a .22 caliber rifle and he (Jones) started

back towards his car. As Jones was moving back towards his car, Jones told Warren he was leaving, but implored Warren to talk to him about the poisoning and stop the madness because it had gone on too long. According to Jones, Warren followed him with his rifle pointed at him and, at some point, Jones heard a crack. Jones testified that he saw Warren's gun and made the decision to fire back.

The evidence established that Jones shot Warren five times. Warren died at the scene from multiple gunshot wounds. Casings from Warren's rifle were also recovered at the scene.

Jones was indicted for murder on April 17, 2008. The jury trial began on January 26, 2009 and continued through February 20, 2009.[1] Jones received instructions on murder, second-degree manslaughter, reckless homicide, insanity, guilty but mentally ill, and self-defense, including an instruction on the wanton or reckless belief in the need for self-defense. In addition, the Commonwealth asked for and received an instruction entitled "Use of Defensive Force," based on KRS 503.055(3), on behalf of the victim, which stated that the victim had no duty to retreat and could use defensive force if he was on his own property and believed it necessary to defend himself.

The jury rendered a verdict of guilty but mentally ill of murder. The trial court sentenced Jones to twenty-five years per the recommendation of the jury. This matter of right appeal followed.

## KRS 503.055(3) INSTRUCTION ON BEHALF OF THE VICTIM

■ At the beginning of trial, the Commonwealth made a motion in limine to preclude the defense from obtaining a self-defense instruction because of KRS 503.055, the "castle doctrine." KRS 503.055(3), the pertinent provision of the statute under the facts in the instant case, provides:

> A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force, if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a felony involving the use of force.

The Commonwealth maintained that because Warren was lawfully on his own property at the time he was shot, the defense of self-defense was unavailable to Jones. Defense counsel countered that there was evidence supporting Jones's claim of self-defense and that the issue would turn on who was the initial aggressor. The trial court ruled that the defense was entitled to try to "sell" its claim of self-defense to the jury, but the Commonwealth was entitled to a "no duty to retreat" instruction pursuant to KRS 503.055(3) on behalf of Warren. The trial court remarked to defense counsel that the instruction for the Commonwealth "cuts your legs right out from under you." Over the objection of Jones, the following instruction was submitted to the jury:

> "Use of Defensive Force"—A person who is not engaged in an unlawful activity in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, in-

---

1. On the night of January 26, 2009, Kentucky was hit by an ice storm that forced the trial to be continued until February 18, 2009.

cluding deadly force, if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a felony involving the use of force.

Jones argues that the instruction essentially negated his affirmative defense of self-defense, to which he was entitled, and that KRS 503.055(3) was not intended to be asserted on behalf of the victim. Jones also contends that proper initial aggressor instructions were given, thus, the "no duty to retreat" instruction violated the bare bones principle of jury instructions.

*Rodgers v. Commonwealth*, 285 S.W.3d 740 (Ky.2009), was this Court's first opportunity to address the 2006 amendments to the self-defense provisions of KRS Chapter 503. We held that under the facts in *Rodgers*, wherein the crime was committed before the amendments were enacted, the amendments did not entitle the defendant to a "no duty to retreat" instruction because the amendments (with the exception of the immunity provision in KRS 503.085) were adjudged to be substantive and, thus, could not be applied retroactively. *Id.* at 756–57. We left the question of whether the amendments now allow for a "no duty to retreat" instruction for another day. *Id.* at 757. Under the facts in the instant case, we likewise do not reach the issue because we adjudge that the amendments do not apply on behalf of the victim of the crime who is not subject to criminal prosecution.

"The cardinal rule of statutory construction is to ... give effect to the intent of the legislature." *Kentucky Ins. Guar. Ass'n v. Jeffers ex rel. Jeffers*, 13 S.W.3d 606, 610 (Ky.2000). In ascertaining the intent of the legislature, a court must not be guided by a single sentence, but must look to the provisions of the whole act and its object and policy. *Cosby*

*v. Commonwealth*, 147 S.W.3d 56, 58 (Ky. 2004).

KRS Chapter 503 is entitled, "General Principles of Justification." "Justification" is defined in KRS 503.020 as "a defense." Relative to KRS 503.055, KRS 503.085 provides that "[a] person who uses force as permitted in ... KRS 503.055 ... is justified in using such force and is immune from criminal prosecution and civil action for the use of such force. . . ." In viewing KRS Chapter 503 as a whole, we deem that it was meant to apply to the conduct of the person who is subject to criminal prosecution as a result of the use of force, and not the victim of such force. Accordingly, the "Use of Defensive Force" instruction in the present case was submitted in error. "In this jurisdiction it is a rule of longstanding and frequent repetition that erroneous instructions to the jury are presumed to be prejudicial; that an appellee claiming harmless error bears the burden of showing affirmatively that no prejudice resulted from the error." *McKinney v. Heisel*, 947 S.W.2d 32, 35 (Ky.1997). We cannot say that no prejudice resulted from the erroneous instruction given in this case. Therefore, we reverse the judgment of conviction and remand for a new trial. We address only those remaining allegations of error that are likely to occur again on retrial.

### EVIDENCE THAT DEFENDANT BELIEVED HE WAS BEING POISONED

During Jones's testimony at trial, his attorney attempted to elicit testimony that Jones believed he was being poisoned when he was in the county jail. The Commonwealth objected on the basis that such evidence was not relevant to the events of March 3, 2008. Defense counsel argued that the testimony demonstrated that Jones suffered from a delusional disorder,

which was relevant to his insanity defense. The trial court sustained the objection, noting that the connection was "tenuous at best." Jones now argues that the exclusion of the testimony denied him the right to present his defense of insanity.

A trial court's evidentiary ruling will be upheld unless the court has abused its discretion. *Goodyear Tire & Rubber Co. v. Thompson,* 11 S.W.3d 575, 577 (Ky. 2000). Under KRS 504.020(1), "[a] person is not responsible for criminal conduct if **at the time of such conduct,** as a result of mental illness or retardation, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." (Emphasis added.) Thus, to be relevant to the defendant's claim of insanity, the evidence must relate to the defendant's mental state at the time of the crime. *See Cannon v. Commonwealth,* 777 S.W.2d 591, 595 (Ky.1989). Here, the evidence that Jones believed he was being poisoned in jail was evidence of Jones's mental state after the offense and had nothing to do with the offense at issue.

Further, the defense was able to present an abundance of evidence that Jones was suffering from a delusional disorder at the time he killed Warren. Jones's expert, Dr. Michael Nicholas, testified that Jones suffered from a delusional disorder of the persecutory type. Other witnesses, as well as Jones himself, testified about the extreme measures Jones took to protect himself and his trailer from the chemicals he believed were being pumped into his trailer. Accordingly, Jones was not deprived of being able to present a defense of insanity, and the trial court did not abuse its discretion in excluding evidence of his delusional behavior in jail.

### *MOSS VIOLATION*

During the Commonwealth's cross-examination of Jones, the prosecutor asked Jones to comment on the veracity of certain witnesses, including a jailer and the detective who took Jones's statement. The defense made no objection to this questioning. As this Court stated in *Moss v. Commonwealth,* "A witness should not be required to characterize the testimony of another witness, particularly a well-respected police officer, as lying. Such a characterization places the witness in such an unflattering light as to potentially undermine his entire testimony." 949 S.W.2d 579, 583 (Ky.1997). We trust that on retrial, the defense will make a proper objection so that the trial court can thwart this improper line of questioning.

Finally, Appellant's alleged error regarding separation of witnesses is rendered moot as the case is being remanded for retrial.

For the reasons stated above, the judgment of the Carlisle Circuit Court is reversed and the case is remanded for a new trial or other proceedings consistent with this opinion.

All sitting. All concur.