GANT, Justice.
Appellant Michael Kruse was convicted of wanton murder, first degree assault and first degree robbery as a result of certain incidents which occurred on January 5, 1980, receiving sentences of 50 years, ten years and 20 years, respectively, to be served consecutively. He appeals to this court as a matter of right.
On the date involved, Michael Kruse and Paul Kordenbrock entered a Western Auto Store in Florence, Kruse remaining at the front of the store. Kordenbrock pulled a pistol from a shoulder holster and forced the store owner, William Thompson, and an employee, Stanley Allen, to lie on the floor at the rear of the store. Kruse, after pretending to be an employee while a custom *193 er wandered into the store, broke into the gun counter. Kordenbrock shot both prostrate victims in the head, killing Allen and wounding Thompson. The two robbers then placed numerous guns into a cardboard box and fled the scene.
The evidence revealed that, on each of the two days preceding the robbery, Kruse and Kordenbrock had been in the same store, on the first occasion asking about woodcutting tools and on the second evincing an interest in guns. Kruse’s father further testified that Michael told him that he and Kordenbrock had planned the robbery before entering the store. There was evidence introduced that both men had consumed a considerable quantity of alcohol and quaaludes prior to the robbery.
The first assignment of error is the failure of the trial court to sustain appellant’s motion for a directed verdict of acquittal on the ground the evidence was insufficient to support a conviction of wanton murder. This motion was denied, and the trial court gave the following instruction:
“You will find the defendant, Michael Kruse, guilty under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following: (a) That the defendant, Michael Kruse, together with Paul Kor-denbrock, conspired to commit a robbery of the Western Auto Store; (b) That in pursuance and furtherance of such conspiracy, in execution thereof and while the same existed, Paul Kordenbrock, in this county on or about January 5, 1980, and before the finding of the indictment herein, killed Stanley Allen by shooting him with a pistol;
AND
(c) That by so conspiring to commit this robbery, Michael Kruse was wantonly engaging in conduct which created a grave risk of death to another and that he thereby caused Stanley Allen’s death under circumstances manifesting extreme indifference to human life.”
The trial court defined “wantonly” and “conspiracy” according to the statutes, and instructed on second degree manslaughter and reckless homicide. We would add here that there is no objection to the content of the murder instruction, but merely an allegation that it should not have been given at all under the facts of this case.
Before the enactment of the penal code it was universally held that, when a homicide occurs during the commission of some other felony which involves a substantial risk of bodily harm to the victim, all who participate in such other felony are equally guilty of the homicide regardless of who does the killing. Martin v. Commonwealth, Ky., 361 S.W.2d 654 (1962). The intent to commit the underlying felony supplies the element of intent to murder, although the killing was not originally contemplated. Simpson v. Commonwealth, 293 Ky. 831, 170 S.W.2d 869 (1943); Tarrence v. Commonwealth, Ky., 265 S.W.2d 40 (1953).
KRS 507.020 provides that a person is guilty of murder when (a) with intent to cause the death of another person, he causes the death of such person, or (b) under circumstances manifesting extreme indifference to human life, he wantonly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person.
The Commentary accompanying KRS 507.020 states:
“_Felony murder, as a separate category of homicide, has been used in Kentucky for many years to impose criminal liability. This offense has typically been used to convict a defendant who accidentally kills another while committing a dangerous felony or who participates in the commission of a felony which results in an intentional act of killing by a participant other than the defendant. The theoretical basis of this offense, stated many times over, is that ‘the turpitude of the act contemplated is by implication of law transferred to the homicide which actually is committed so as to make the latter offense a killing with malice con *194 trary to the real fact of the case as it appears in evidence.’ Tarrence v. Commonwealth, 265 S.W.2d 40, 50-51 (1953), citing 26 Am.Jr., Homicide, § 188, 309.
KRS 507.020 does not preclude the type of conduct described above from constituting murder. It does, however, abandon the doctrine of felony murder as an independent basis for establishing an offense of homicide. Under the section, deaths occurring in the course of other felonies must be judged under the ‘intentional’ and ‘wantonness with extreme indifference’ provisions of KRS 507.020(l)(a) and (b) and the ‘wantonness’ provision of KRS 507.040. Thus, if a defendant intentionally commits an act of killing during a felony his guilt is to be determined under KRS 507.020(l)(a). If a felony participant other than the defendant commits an act of killing, and if a jury should determine from all the circumstances surrounding the felony that the defendant’s participation in that felony constituted wantonness manifesting extreme indifference to human life, he is guilty of murder under KRS 507.-020(l)(b). On the other hand, if the jury should determine that his participation constituted wantonness not manifesting extreme indifference to human life, he is guilty only of manslaughter in the second degree, KRS 507.040.” (Emphasis added.)
KRS 502.020 provides:
“(1) A person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he:
(a) Solicits, commands, or engages in a conspiracy with such other person to commit the offense; or
(b) Aids, counsels, or attempts to aid such person in planning or committing the offense; or
(c) Having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so.
(2) When causing a particular result is an element of an offense, a person who acts with the kind of culpability with respect to the result that is sufficient for the commission of the offense is guilty of that offense when he:
. (a) Solicits or engages in a conspiracy with another person to engage in the conduct causing such result; or
(b) Aids, counsels, or attempts to aid another person in planning, or engaging in the conduct causing such result; or
(c) Having a legal duty to prevent the conduct causing the result, fails to make a proper effort to do so. (Enact.Acts 1974, ch. 406, § 21.)”
The Commentary to KRS 502.020 states:
“.... In an effort to further clarify the circumstances under which liability could be imputed from one conspirator to another the Court had said that ‘natural and probable consequences’ are those which ‘should have been necessarily and reasonably anticipated’ in the completion of the conspiratorial objective. Commonwealth v. Walters, [206 Ky. 162] 266 S.W. 1066, 1069 (1924).
In virtually every case involving these principles, the Court has been concerned with imputing liability for murder to all participants of a conspiracy which had as its objective the commission of another felony, usually robbery, burglary or arson. In a few cases, the Court imposed criminal liability in this situation because of the existence of the conspiracy. In doing so, it never clearly stated the relationship of the ‘conspiracy’ doctrine to the ‘felony murder’ doctrine. In this code a different approach to the problem is taken, one that achieves the same result as is achieved under pre-existing law but without the difficulty that previously existed in the law. A defendant’s liability for a death which occurs under these circumstances is governed by the provisions of the homicide chapter (KRS Chapter 507). The following example serves to demonstrate: D agrees with another person to commit an armed robbery. During the course of this robbery a third person is killed by D’s cohort. If D and his co-conspirator had agreed as a part of the conspiracy to kill anyone interfering *195 with their endeavor, he could be convicted under subsection (1) on intentional murder. In the absence of such an agreement his liability must depend upon what the decision makers find his state of mind to have been with regard to the resulting death. If from all of the circumstances, they find that he acted with wantonness manifesting extreme indifference to human life, he is guilty under KRS 507.020(l)(b) of murder; if they find that he acted with wantonness manifesting no such indifference, he is guilty under KRS 507.040 of manslaughter in the second degree; but if they find that he acted with recklessness in causing the death, he is guilty under KRS 507.050 of reckless homicide. On the other hand, if they find that he had no culpability with regard to the death, he is not guilty of any charge involving homicide, notwithstanding the existence of the conspiracy to rob.”
KRS 500.100 provides that the Commentary accompanying the penal code may be used in construing the provisions of the code. In light of the Commentary accompanying KRS 507.020 and KRS 502.020 we think the penal code has substantially altered the concept of the felony murder doctrine. The culpability of Michael Kruse for the killing of the deceased must now be measured by the degree of wantonness or recklessness reflected by the extent of his participation in the underlying robbery rather than by the implication of intent to murder from the intent to participate in the robbery.
The key to the case before us is contained in the Commentary accompanying our murder statute, KRS 507.020, aforesaid, which we repeat for emphasis:
“If a felony participant other than the defendant commits an act of killing, and if a jury should determine from all the circumstances surrounding the felony that the defendant's participation in that felony constituted wantonness manifesting extreme indifference to human life, he is guilty of murder under KRS 507.-020(l)(b).”
In this case, with the evidence that the appellant participated in the planning of an armed robbery in which a .357 Magnum was used, that for two days the participants “cased” the store to determine the number of employees, customer frequency, location of the weapons to be stolen, etc.; with the testimony there was a plan to steal those weapons, all coupled with the use of drugs and alcohol immediately prior to the robbery, it is clear there were sufficient “circumstances surrounding the felony” to submit this case to the jury under proper instructions of the court. It is equally clear that the determination of wanton murder by the jury under these circumstances was not contrary to the evidence.
The identical argument is made by the appellant in relation to his conviction of first degree assault in the shooting and wounding of William Thompson, to wit, that there was insufficient evidence to refute a motion for directed verdict of acquittal. KRS 508.010(l)(b) states:
“(1) A person is guilty of assault in the first degree when:

(b) Under circumstances manifesting extreme indifference to the value of human life he wantonly engages in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person.”
Again, under the circumstances of this case, it is our opinion that the wanton conduct instructions were properly submitted to the jury.
The next assignment of error we will discuss is the contention of the appellant relating to double jeopardy. The factual background giving rise to this argument is that, after the jury was impaneled and the trial was in progress, appellant informed the court he wished to withdraw his plea of not guilty to the charge of first degree robbery and enter a plea of guilty, which was done pursuant to an agreement between the appellant and his counsel, the *196 Commonwealth, and the trial court.[1] It was further agreed that the jury would fix the punishment. Appellant now contends this plea of guilty to first degree robbery attaches double jeopardy to the convictions of wanton murder and first degree assault, as these latter convictions constitute multiple punishment for the same offense, citing Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), quoting North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). We do not agree.
As we have previously pointed out, the Penal Code of this Commonwealth, effective January 1, 1975, has abrogated the felony murder doctrine. Thus, there is no longer a transfer of intent from the accompanying felony to the homicide. The defendant herein was convicted of wanton murder and wanton assault, not intentional instances of either offense. The instant case is a classic example of the situation provided for in KRS 505.020, which provides:
(1) When a single course of conduct of a defendant may establish the commission of more than one offense, he may be prosecuted for each such offense.
Certain exceptions to this general law are provided, none of which apply herein. As the court stated in Blockburger v. United States, 284 U.S. 299, 302, 52 S.Ct. 180, 181, 76 L.Ed. 306 (1932):
The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately.... If the latter, there can be but one penalty.
The reasoning in Blockburger was well applied in Brown v. State of Alabama, 619 F.2d 376, 378 (5th Cir.1980):
An essential element of the crime of assault with intent to murder is the intent to take life, which is not an element of robbery. (Citing cases.) An essential element of the crime of robbery is the taking and carrying away of the property of another by force, which is not an element of assault with intent to murder. The ... crimes ... are therefore two separate and distinct offenses.
In this case, the robbery with intent to take property by force was but one element in the circumstances necessary for submission to the jury the question of wantonness in the murder and assault. The other attendant circumstances were not necessary elements of the crime of robbery, and it is clear there were three separate and distinct offenses in this case. Hence, the plea of guilty to one of the offenses did not attach jeopardy to the others. As the court said in Albernaz v. United States, 450 U.S. 333, 101 S.Ct. 1137, 1142, 67 L.Ed.2d 275 (1981):
If each offense requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.
We have carefully examined the appellant’s other assertions of error herein, and find they are without merit.
The judgment of the Boone Circuit Court is affirmed.
STEPHENS, C.J., and AKER, GANT, STEPHENSON, VANCE and WINTER-SHEIMER, JJ., concur.
LEIBSON, J., dissents and files a dissenting opinion.

. Appellant entered an "Alford plea.” He conceded the evidence of his crime was overwhelming without expressly stating that he committed the crime. The legal effect of an "Alford plea” is the same as with any plea of guilty. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1977).