# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

$\mathfrak{Supreme}$ $\mathfrak{Court}$ $\mathfrak{of}$ $\mathfrak{Kentucky}$ FINAL

2016-SC-000118-MR           DATE 5/18/17 Kim Redmon, DC

MARCUS POWELL                                               APPELLANT

V.
ON APPEAL FROM KENTON CIRCUIT COURT
HONORABLE PATRICIA M SUMME, JUDGE
NO. 15-CR-00520-002

COMMONWEALTH OF KENTUCKY                                     APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

A circuit court jury convicted Marcus Rashe Powell of criminal attempt to commit first-degree murder (principal or accomplice) and fixed his punishment at ten years' imprisonment, enhanced to twenty years based on the jury further finding Powell's status as a second-degree persistent felony offender. The trial court entered judgment conforming to the jury's verdict and imposed a sentence consistent with the jury's recommendation.

Powell appeals the judgment as a matter of right.[1] He contends the trial court erred by (1) failing to grant a directed verdict motion on all charges except wanton endangerment because of a lack of evidence of the necessary intent to commit the offense of murder, (2) improperly answering a question

---

[1] Ky. Const. § 110(2).

from the jury in violation of the Sixth Amendment, and (3) improperly instructing the jury in violation of his right to a unanimous verdict. Because none of these alleged errors warrant reversal, we affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Underlying Powell's conviction is a series of events that ultimately led to shots being fired at the home of Justin and Jeannette Massengale.

For some period of time before the shooting incident, Powell shared a residence with Justin and Jeannette Massengale, along with Christina Hughes and her husband. The Massengales moved out of the shared residence, keeping their key to the residence. Powell and Christina Hughes, who developed a romantic relationship, remained in the residence. After the Massengales moved, the residence was burglarized three or four times. Powell and Hughes suspected that the Massengales were responsible for these burglaries, so Hughes, who owned a gun that was in her brother's possession, asked him to return the gun to her.

On the day of the shooting, at the request of the Massengales, Jeanette Massengale's younger brother Joseph "Jojo" Hemingway, returned to the residence ostensibly to retrieve some items the Massengales claimed to have left behind and used the Massengales' key. While Jojo was exiting the home, Powell and Hughes arrived and demanded the key from JoJo, and he acquiesced.

Later that day, Hughes and Powell allegedly discovered that some of Powell's personal belongings were missing, and they suspected Jojo had taken them. Powell and Hughes decided to confront Jojo. On the way, Hughes and Powell picked up Hughes's relatives Jeremy "Worm" Griffen and Tequila "Kiki" Brown. Powell and Hughes questioned Jojo about the burglaries and Griffen and Brown assaulted him. After the assault, all four left for the Massengale residence.

Meanwhile, Jojo called Jeanette and told her about the assault. She then woke Justin to inform him of Jojo's assult. Justin then exited the back door to check on Jojo when the first four shots were fired at the Massengale residence.

The police apprehended Powell and Hughes the same day as the shooting incident and both were charged and brought to trial.

## II. ANALYSIS.

### A. Standard of Review.

Powell concedes that all of his alleged errors are unpreserved and he requests palpable-error review of each. So we review each alleged error under RCr 10.26,[2] granting relief upon a showing of "palpable error."[3] Palpable error requires a showing that the alleged error affected the "substantial rights" of a defendant, for whom relief may be granted "upon a determination that manifest injustice has resulted from the error."[4] To find manifest injustice, the reviewing

---

[2] Kentucky Rules of Criminal Procedure 10.26.

[3] *Id.*

[4] *Id.*

3

court must conclude that the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be "shocking or jurisprudentially intolerable."[5] We analyze Powell's substantive arguments under this standard.

### B. Powell was not entitled to Directed Verdict.

When deciding a directed-verdict motion, the trial court must view all evidence in a light favorable to the Commonwealth and determine whether there is sufficient evidence for a reasonable jury to believe beyond a reasonable doubt that the defendant is guilty.[6] In *Commonwealth v. Benham* we stated that "[o]n appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal."[7] In applying this standard, we reject Powell's argument.

Powell asserts that he was entitled to a directed verdict for conviction for criminal attempt to commit first-degree murder (principal or accomplice). As is noted in *Perry v. Commonwealth*, criminal attempt to commit murder requires the intent to kill.[8] Powell rests his argument on the theory that the Commonwealth failed to prove the intent necessary for conviction. Both parties agree, failure to offer proof of intent would be fatal to the Commonwealth's

---

[5] *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006).

[6] *Pollini v. Commonwealth*, 172 S.W.3d 418, 429 (citing *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991)).

[7] *Benham*, 816 S.W.2d at 187.

[8] *Perry v. Commonwealth*, 839 S.W.2d 268, 273 (Ky. 1992).

charge. Both parties further agree that intent can be inferred from the actions of the defendant.[9]

Powell asserts that the Commonwealth did not meet its burden of proving that the shots sent Justin's way were intended to kill him. Powell advances his position by arguing that the evidence produced did not indicate the shooters skill level, how close a bullet came to hitting Justin, and which of the multiple shots were fired while Justin was outside of his residence.

The Commonwealth rebuts his argument by drawing our attention to the fact that bullet holes were found in trash cans that were located approximately five to six feet from the door that Justin had exited. Additional bullets struck a retaining wall at the front of the residence and a downspout at the rear of it.

Mindful of our standard that a directed verdict should only be granted if the evidence is so insufficient that a reasonable jury could not find guilt, we find no error in the trial court's denial of a directed verdict. While the shooter did not necessarily verbally indicate that he or she was there to kill Justin, a reasonable jury could, and under the facts presented in this case did, find that the Powell-Hughes party of four showing up at the Massengale residence and shooting in Justin's direction with bullets striking in close proximity to him, sufficiently indicated the shooter's intent to kill. Furthermore, the four individuals at Justin's house that night had been involved with assaulting

---

[9] *Stopher v. Commonwealth,* 57 S.W.3d 787, 802 (Ky. 2001); *Marshall v. Commonwealth,* 60 S.W.3d 513, 518 (Ky. 2001).

5

Justin's brother-in-law and a jury may fairly consider that fact, given the violent nature of the crime with which Powell was charged.

Moreover, because this error is unpreserved, it must meet the high standard of palpable error. It cannot be said that the trial court's directed-verdict denial was error.

### C. Powell's Sixth Amendment Rights were not violated.

Powell asserts that his Sixth Amendment rights were violated. He combines two statements made to the jury to advance this positon.

First, Powell notes that at the close of voir dire the trial court informed the jury that "Not to follow the law would be a breach of your duty. It violates the very system in which we are participating." Powell pairs this statement with a response given by the trial court to a jury question during the penalty phase. The jury, while deliberating the second-degree persistent felony offender charge, submitted the following question to the trial court: "If we believed No. 5 A-E are all true, do we still have a choice to say Persistent Felony or is it a law under our Oath and no choice made is it our choice to say not guilty of a Persistent Offender?" (Strikethrough in original.) With both parties in agreement, the trial court responded to the jury's question by stating simply, "You are to follow the instructions."

Powell asserts that the jury, looking to provide leniency to Powell, was asking the trial court for guidance concerning jury nullification. Jury nullification occurs when a jury believes that the elements to prove guilt have

been met for a certain offense, but decides nonetheless to acquit the defendant of the charge.[10] And jury nullification is a constitutionally permissible option.[11]

Recognizing that jury nullification is constitutionally permissible, we must address the narrower question before us: whether the trial court inhibited the jury's right to nullification. Both parties encourage us to revisit our analysis in *Medley v. Commonwealth*, but that is not necessary to dispose of Powell's argument.[12] The trial court did not violate Powell's Sixth Amendment rights.

First, we find no error with the judge's comment after voir dire, instructing the jury to follow the law and a failure to do so would be a breach of their oath. We are persuaded by *United States v. Avery*, which stated, "Although jurors may indeed have the power to ignore the law, their duty is to apply the law as interpreted by the court and they should be so instructed."[13] That is precisely what the trial court judge did; she simply instructed the jury to apply the law, reminding them of their duty to do so.

---

[10] *United States v. Thomas*, 116 F.3d 606, 614 (2nd Cir. 1997) ("'nullification,' a practice whereby a juror votes in purposeful disregard of the evidence, defying the court's instructions on the law.").

[11] *United States v. Leach*, 623 F.2d 1337 (5th Cir. 1980) ("Jury nullification—the right of a jury to acquit for whatever reasons even though the evidence supports a conviction—is an important part of the jury trial system guaranteed by the Constitution."); *McGuire v. Commonwealth*, 368 S.W.3d 100, 107 (Ky. 2012); *Commonwealth v. Durham*, 57 S.W.3d 829, 838 (Ky. 2001).

[12] *Medley v. Commonwealth*, 704 S.W.2d 190 (Ky. 1985).

[13] *United States v. Avery*, 717 F.2d 1020, 1027 (6th Cir. 1983) (citing *Sparf & Hansen v. United States*, 156 U.S. 51, (1895); *United States v. Wiley*, 503 F.2d 106 (8th Cir. 1974) *United States v. Dougherty*, 473 F.2d 1113 (D.C. Cir. 1972); *United States v. Dellinger*, 472 F.2d 340, 408 (7th Cir. 1972)).

7

Further, the judge's response to the jury during the penalty phase, even in conjunction with her prior statement, does not persuade us that she violated the jury's power of nullification. Both parties agreed to the response the trial court gave to the jury. "A party generally may not invite error and then complain thereof."[14] When faced with the question, the trial court might have simply responded with "I cannot answer the question," but the answer given and agreed to by each party was not in the least inappropriate. It appears Powell is arguing that the trial court should have responded to the jury's question by informing them of their rights to jury nullification, but a defendant does not have such a right.[15]

Because we are satisfied that the trial court did not in any way interfere with the jury's deliberation, we find no error.

## D. There was no Error in the Jury Instructions.

Lastly, Powell asserts that the trial court erred in the jury instructions. He asks us specifically to review the trial court's jury instructions as it applies to his conviction for attempt to commit first-degree murder (principal or accomplice). Powell argues that the combination instructions employed by the trial court denied him his right to a unanimous verdict.

Powell attempts to further his argument by asserting for the first time on appeal that failing to include Tequila Brown and Jeremy Griffen as potential

---

[14] *See United States v. Sharpe*, 996 F.2d 125, 129 (6th Cir. 1993); *Bruce v. Commonwealth*, 581 S.W.2d 8, 9 (Ky. 1979).

[15] See *United States v. Carr*, 424 F.3d 213, 219 (2nd Cir. 2005); *Merced v. McGrath*, 426 F.3d 1076, 79 (9th Cir. 2005); *United States v. Manning*, 79 F.3d 212, 219 (1st Cir. 1996).

8

principals or accomplices was error, a notion that Powell's trial counsel specifically rejected. Powell now asserts that individual jurors may have voted to convict on the theory that Powell was the principal or accomplice to Griffen, Brown, or Hughes, denying him his right to a unanimous verdict. Powell further admits that he failed to object to the instruction that was given and he failed to offer alternative instructions.

Under Instruction No. 5, the jury was given the opportunity to convict Powell of either Criminal Attempt to Commit Murder if they believed he fired the gun, or Complicity to Criminal Attempt to Commit Murder if they believed that Hughes fired the gun. In the alternative, Instruction No. 6, the instruction under which the jury convicted Powell, included instruction No. 5 by reference. Instruction No. 6 provided that if the jury believed beyond a reasonable doubt that Powell was guilty of "Criminal attempt to Commit Murder or Complicity to Criminal Attempt to Commit Murder ... but you are unable to determine from the evidence whether the defendant committed the crime as a Principal or as Accomplice, then you will find him guilty of Criminal Attempt to Commit Murder, Principal or Accomplice, under this instruction." Ultimately, unable to determine whether Powell fired the gun, or merely assisted Hughes, the jury convicted him under Instruction No. 6.

As the Commonwealth notes, combination jury instructions are not prohibited in Kentucky, and they do not destroy a unanimous verdict.[16] Further, "A verdict cannot be attacked as being non-unanimous where both

---

[16] *Halvorsen v. Commonwealth,* 730 S.W.2d 921, 925 (Ky. 1986).

theories are supported by sufficient evidence."[17] Either theory in jury Instruction No. 5 was reasonably supported by the evidence, allowing for a proper conviction under Instruction No. 6.

The Commonwealth introduced sufficient evidence to support a finding that either Powell or Hughes was the shooter. As to Powell, Justin testified that Powell was the shooter and that he recognized him because of his familiarity with Powell, having known him for five or six years. There was also testimony from Officer Ullrich that after arresting Hughes, she asked what the consequences would be if she confessed to being the shooter, and indeed did tell the police she was the shooter, only to recant later. Powell and Hughes were in a romantic relationship, and it would not be unreasonable for the jury to find Hughes's inconsistent testimony as a way to avoid the fact that Powell was the shooter. These facts could reasonably provide sufficient evidence upon which a jury could rely to support the principal theory of Instruction No. 5.

Alternatively, the Commonwealth provided sufficient evidence that Hughes herself was the shooter, and Powell was acting as an accomplice. The gun used belonged to Hughes. Shortly before the shooting Hughes had asked her brother to return it to her. And as noted above, Hughes originally told the police she had been the shooter, later changing her story.[18] These facts could provide sufficient evidence for which a jury could support the accomplice theory under Instruction No. 5.

---

[17] *Id.* (citing *Wells v. Commonwealth*, 561 S.W.2d 85 (Ky. 1978)).

[18] *Miller v. Commonwealth*, 283 S.W.3d 690, 697 (Ky. 2009) ("It is the jury's responsibility to weight the credibility of the evidence.").

Lastly, both parties recognize that Kentucky allows for inconsistent verdicts.[19] Even though Hughes was not convicted under an accomplice or principal theory that does not suggest lack of unanimity in the verdict against Powell. Powell admits himself that it is possible that the jury, showing leniency to Hughes, acquitted her of being Powell's principal and/or accomplice, while at same time convicting Powell for the same offense.

Accordingly, because either theory could reasonably support a jury finding, we find no palpable error.

### III.      CONCLUSION.

For the foregoing reasons, the judgment is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Susan Jackson Balliet
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Megan Kleinline
Assistant Attorney General

---

[19] *Commonwealth v. Harrell*, 3 S.W.3d 349, 351 (Ky. 1999).

11