RENDERED: JULY 16, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0599-MR

QUINTEZ JOHNSON                                     APPELLANT

APPEAL FROM KENTON CIRCUIT COURT
HONORABLE GREGORY M. BARTLETT, JUDGE
ACTION NO. 18-CR-01170

v.

COMMONWEALTH OF KENTUCKY                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: JONES, MAZE, AND L. THOMPSON, JUDGES.

MAZE, JUDGE: Appellant, Quintez Johnson, appeals a judgment from the Kenton Circuit Court confirming a jury verdict sentencing him to five years' imprisonment for eleven counts of criminal possession of a forged instrument in the first degree, enhanced to ten years upon a finding of Johnson being a persistent felony offender in the first degree. For the following reasons, we affirm.

BACKGROUND

On May 23, 2018, Johnson contacted James Jackson through Facebook Messenger to purchase some Air Jordan shoes that Jackson had posted to sell on Facebook Marketplace for $70.  Johnson and Jackson agreed to meet in Covington, Kentucky that night to complete the sale.

When Jackson arrived at the meeting place that night, he recognized Johnson at a distance from his Facebook profile.  Johnson approached the driver's side window of Jackson's car and exchanged three $20 bills and two $5 bills for the shoes.

On the way home, Jackson felt the bills and noticed they had an unusual texture.  He went to a White Castle and attempted to purchase food with some of the bills Johnson had given him.  The staff informed him that the bills were fake.  Jackson saw that the bills stated: "It's not the money, it's a joke." Jackson then contacted the Covington Police Department.

On June 6, 2018, Andrew Thomas posted a pair of Air Jordan shoes for sale on Facebook Marketplace.  Johnson contacted Thomas the same day to purchase the shoes for $120 and asked Thomas to meet him for the sale.  When Thomas arrived at the meeting place, he recognized Johnson from his Facebook profile.  After receiving six $20 bills from Johnson, Thomas realized that something was wrong with the texture of the bills.  Upon inspection, Thomas

noticed the bills stated: "It's not the money, it's a joke." Thomas contacted the Covington Police Department that night. At later dates, Thomas gave the Facebook messages with Johnson to the police, and he and Jackson selected Johnson's image out of a photo lineup. Johnson was subsequently arrested by Covington Police.

Johnson was found guilty at trial of eleven counts of criminal possession of a forged instrument in the first degree. Because Johnson had been convicted of a felony in the past, the jury was given an instruction under which they could decide that Johnson was a persistent felony offender. During the penalty trial, Johnson's counsel stated to the jury, "I would also like to remind you, or let you know that, even if you find him eligible as a persistent felony offender, that does not mean you have to enhance his sentence by convicting him." The Commonwealth objected, and the Judge instructed the jury to follow the law as instructed, specifically stating, ". . . I think counsel misstated the law as it applies to sentencing. If you find the defendant guilty, you have to follow the instructions, you can't just say well we're not going to punish him. That's called jury nullification. You have to follow the law as instructed, okay, all right."

During penalty phase deliberations, the jury sent a note to the Judge asking, "Are we required by law to label Mr. Johnson a persistent felony

offender?" After consultation with the attorneys, the trial court brought the jury to the courtroom and gave the following answer:

> [Your] job is to make findings of fact . . . You're not the law maker. You don't make policy. You don't make the law. You make a factual finding. The instruction that we're dealing with here is Instruction Number 14 which states you will find the defendant Quintez L. Johnson guilty of being a persistent felony offender in the first degree under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt, all the following. . . . A, B, C, D, and E all must be found and if you find that then according to the law, you have found him to be by definition a persistent felony offender. Okay, all I'm going to tell you to do is follow the law, make factual findings, and the standard is beyond a reasonable doubt for all those elements.

The jury subsequently returned a verdict finding Johnson guilty of being a persistent felony offender and recommended a sentence of five years. The circuit court entered judgment against Johnson on April 3, 2020, finding him guilty of eleven counts of criminal possession of a forged instrument in the first degree (one count for each counterfeit bill), with a prison term of five years for each count that would run concurrently; two counts of theft by deception under $500 and one count of being a persistent felony offender in the first degree; and he was ordered to pay restitution to the victims in the amount of $190. Johnson's sentence of five years was enhanced to ten years upon the finding of him being a persistent felony

offender in the first degree.  The two misdemeanor theft by deception charges were waived by the Commonwealth.

Johnson now appeals the unpreserved issues of (1) double jeopardy, (2) restitution, and (3) jury nullification.

STANDARD OF REVIEW

Johnson concedes that his three alleged errors are unpreserved and requests palpable error review of each.  We review the issues under the palpable error standard of Kentucky Rules of Criminal Procedure (RCr) 10.26, which states, "[a] palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."

ANALYSIS

**I.     Double Jeopardy**

Johnson argues that being charged and convicted of eleven counts of criminal possession of a forged instrument in the first degree violated his right to not be convicted twice for the same offense under the Fifth Amendment of the United States Constitution, Section 13 of the Kentucky Constitution, and Kentucky Revised Statutes (KRS) 505.020.  Though the issue was not preserved, "the constitutional protection against double jeopardy is not waived by failing to object

at the trial level." *Walden v. Commonwealth*, 805 S.W.2d 102, 105 (Ky. 1991) (citing *Sherley v. Commonwealth*, 558 S.W.2d 615 (Ky. 1977), *overruled on other grounds by Dixon v. Commonwealth*, 263 S.W.3d 583 (Ky. 2008)). Double jeopardy prohibits a defendant from being tried a second time for the same offense after either conviction or acquittal. *McNeil v. Commonwealth*, 468 S.W.3d 858, 866 (Ky. 2015). It also prevents multiple punishments for the same offense. *Id.*

The General Assembly codified the double jeopardy rule in KRS 505.020, stating in relevant part:

> (1) When a single course of conduct of a defendant may establish the commission of more than one (1) offense, he may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense when:
>
> . . .
>
> (c) The offense is designed to prohibit a continuing course of conduct and the defendant's course of conduct was uninterrupted by legal process, unless the law expressly provides that specific periods of such conduct constitute separate offenses.

No published Kentucky case deals with double jeopardy in the context of a criminal possession of a forged instrument in the first degree case. However, KRS 516.050 states that "[a] person is guilty of possession of a forged instrument in the first degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses *any* forged instrument of a kind specified in KRS 516.020." (Emphasis added.)

-6-

Johnson argues for this Court to adopt a transactional approach because KRS 516.050 does not state the passage of each counterfeit bill should be charged as a separate offense. Even though he passed a total of eleven counterfeit bills, Johnson argues they were passed in two transactions and, thus, he should only have been charged with two criminal transactions. Johnson relies on *Williams v. Commonwealth*, 213 S.W.3d 671 (Ky. 2006) and the unpublished opinion, *Dennis v. Commonwealth*, No. 2007-CA-002266-MR, 2009 WL 2341432 (Ky. App. Jul. 31, 2009), for support.

In *Williams*, *supra*, the Kentucky Supreme Court dealt with a statute similar to KRS 505.020, KRS 218A.1404(3). Similar to this case, Dr. Williams claimed he should have been charged with only two counts of unlawfully prescribing a controlled substance off of two transactions because KRS 218A.1404(3) was meant to prohibit a course of conduct. Thus, charging him with four counts violated the proscription against double jeopardy. The Court disagreed, reasoning that the plain words of the statute clearly indicated that each dispensation, prescription, distribution, or administration in violation of the law is a specific period of conduct constituting a separate offense. *Id.* at 684.

In *Dennis*, *supra*, this Court vacated Dennis's sentence based upon a violation of double jeopardy rights when she passed counterfeit bills during two distinct sales transactions in different gas stations. The Court held that

"punishment must be based upon the number of criminal transactions in which she engaged as opposed to the number of counterfeit bills she passed." *Id.* at *2. However, the *Dennis* case is distinguishable because Dennis was sentenced to five years on each of three counts of criminal possession of a forged instrument, to run consecutively, not concurrently (except for one count), totaling fifteen years' imprisonment. Here, the circuit court determined that Johnson's eleven sentences were to run concurrently, so we do not have the multiple punishment issue. Moreover, unpublished opinions are not binding precedent, but only persuasive authority. CR 76.28(4)(c). Therefore, we are not required to follow their holdings. *Dennis* has not been cited since it was rendered, and the transactional analysis in that case is at odds with the approach taken in *Williams*, *supra*.

In *Early v. Commonwealth*, 470 S.W.3d 729 (Ky. 2015), the Kentucky Supreme Court cited *Williams* again and held:

> The legislature's use of the singular "*a* forged prescription" demonstrates its intention to punish the trafficking of each forged prescription as a separate and distinct trafficking offense. Moreover, when it intends to bar a continuing course of conduct, the legislature has consistently drafted criminal statutes to specify certain acts or quantities that may be included in a singular crime. *See*, *e.g.*, KRS 218A.1412(2) (specifying that amounts may be reached over a series of transactions) . . . .

*Id.* at 738-39. This seems to limit the transactional analysis to areas where the legislature has specifically designated that approach.

-8-

We conclude that manifest injustice did not result from Johnson being convicted on eleven counts of criminal possession of a forged instrument in the first degree in accordance with KRS 516.050. The plain language of the relevant statutes and the holding in *Williams* support this finding.

## II.    Restitution

Johnson claims that the trial court erred when it ordered him to pay $190 in restitution to the two victims ($70 to Mr. Jackson and $120 to Mr. Thomas) because due process requires an adversarial hearing when the parties do not agree on restitution, and none was held in this case. The Commonwealth argues that it asked for restitution in the amount of $190 to the two victims at the end of the sentencing hearing. Johnson did not object, and the trial court ordered the restitution.

KRS 532.032 deals with restitution but does not provide that a hearing must be conducted before determining restitution. *Jones v. Commonwealth*, 382 S.W.3d 22, 31 (Ky. 2011). In *Jones*, the Kentucky Supreme Court explained that "implicit in our statutory scheme requiring restitution, is an adversary hearing, *ordinarily conducted* in conjunction with the final sentencing hearing, at which the trial court will have broad discretion to make findings based upon reliable information, but not bound by the rules of evidence or traditional rules of pleading." *Id*. (Emphasis added.) The Court envisioned that in the great majority

of cases, restitution, "when not agreed upon or clearly established from the evidence presented during trial, will be readily ascertained and easily verified . . . ." *Id*. The Court further stated:

> However, we recognize that not every disputed issue of restitution can be fairly or efficiently resolved in a summary proceeding like the traditional sentencing hearing. KRS Chapter 532 requires judges to impose restitution when applicable, but it does not compel our trial judges to do so without conducting a proper hearing with whatever degree of formality is necessary in the particular circumstances to assure compliance with constitutional due process. In the more complex claims, with factual issues that do not lend themselves to being reliably resolved in a summary proceeding, the trial judge must exercise the broad discretion of that office to resolve the matter in a way that respects the constitutional rights of all the parties and that achieves substantial justice.

*Id*.

During trial, both Jackson and Thomas testified to the amount of counterfeit money given to them by Johnson in exchange for their shoes, which were never returned to them. Jackson was given $70 in forged bills, and Thomas was given $120. The amount of counterfeit money given was never disputed.

We conclude that the trial court did not err by ordering Johnson to pay $190 in restitution to the victims.

### III. Jury Nullification

Johnson claims the trial court violated his Sixth Amendment right to a trial by jury and inhibited the jury's right to nullification. In criminal cases, jury

-10-

nullification is a "longstanding common law tradition, now constitutionalized, that the jury always has the option of disbelieving the evidence offered to prove guilt and returning a 'not guilty' verdict." *Medley v. Commonwealth*, 704 S.W.2d 190, 191 (Ky. 1985). The principle of jury nullification applies equally to sentencing enhancements. *Id.* (citing *Coleman v. Commonwealth*, 125 S.W.2d 728 (Ky. 1939)). However, the right to disbelieve evidence does not equate to the right to disregard the law. *Id.* Thus, the court cannot instruct the jury that it has a right to find the defendant not guilty even though the evidence proves his guilt beyond a reasonable doubt. This rule applies to the charge of being a persistent felony offender as well as the principal charge. *Id.* (citing *Williams v. Commonwealth*, 644 S.W.2d 335 (Ky. 1982)). "A jury is entitled to disbelieve evidence of prior convictions . . . However, once the jury is persuaded that the defendant has been convicted of two or more felonies, the language of KRS 532.080(1) is mandatory: the jury must fix a sentence within the ranges specified in the statute." *Id.* (quoting *Adkins v. Commonwealth*, 647 S.W.2d 502, 506 (Ky. App. 1982)).

The Court in *Medley* explained that just as it is improper for a judge to instruct the jury that it may disregard the law and return a not guilty verdict on the persistent felony offender charge because it believes that the penalty set by the legislature is too severe, it is equally improper for counsel to make such an argument. *Id.* at 191. "Counsel has the right to argue that the jury may disbelieve

-11-

the evidence and find the defendant not guilty, but no right to argue that it may disregard the law because it believes the minimum penalty set by the legislature is too severe." *Id*.

"Although jurors may indeed have the power to ignore the law, their duty is to apply the law as interpreted by the court and they should be so instructed." *United States v. Avery*, 717 F.2d 1020, 1027 (6th Cir. 1983). Thus, the trial court did not err when it instructed the jury to follow the law. Additionally, when the trial court responds to a jury question regarding jury nullification, a defendant does not have the right for the court to inform the jury of their nullification power at that juncture. *See Medley*, 704 S.W.2d at 191 ("it would be improper to instruct the jury that it may disregard the law and return a verdict of 'not guilty' on the persistent felony offender charge because it believes that the penalty set by the legislature is too severe . . .").

Ultimately, whether a jury may be informed of their nullification power is a question for the legislators of the General Assembly or the Kentucky Supreme Court. In light of the controlling law, we conclude that no manifest injustice resulted from the trial court's instructions to the jury.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the Kenton Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Shannon Dupree
Jennifer Wade
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Stephanie L. McKeehan
Assistant Attorney General
Frankfort, Kentucky