# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 14, 2018
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2017-SC-000169-MR    DATE 7-6-18 Carol Coleman
CDC

PHILLIP J. THOMPSON                                        APPELLANT

V.
ON APPEAL FROM CLAY CIRCUIT COURT
HONORABLE OSCAR G. HOUSE, JUDGE
NO. 14-CR-00147 & 14-CR-00147-002

COMMONWEALTH OF KENTUCKY                                   APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING IN PART, VACATING IN PART, AND REMANDING

A Clay County grand jury indicted Phillip Thompson (Thompson) with one count Assault in the First Degree and one count Criminal Abuse, First Degree. In 2016, Thompson proceeded to trial. A jury convicted Thompson of both counts and recommended a total thirty-year sentence. Thompson now appeals this conviction as a matter of right on four grounds: instructions to the jury on both first-degree assault and first-degree criminal abuse violated double jeopardy; the instructions to the jury violated his right to a unanimous verdict; questioning of the victim's mother about punishment was palpable error; and questioning of Kentucky State Police Trooper Mark Allen violated

Kentucky Rule of Evidence (KRE) 403 and 404. For the following reasons, we affirm in part, reverse in part, and remand to the Clay Circuit Court for further proceedings consistent with this opinion.

## I. BACKGROUND

On December 8, 2014, Amber Willoughby (Willoughby), the mother of the victim in this case, A.G., went to the local office of the Cabinet for Health and Family Services. Willoughby spoke to the woman at the front desk, saying she needed to be speak with someone. The employee stated Willoughby seemed scared or upset and kept looking towards a man with her, later identified as Thompson's stepfather. The employee gestured to Willoughby to write a note and pass it to her. Willoughby wrote the following note:

> My baby's father has been tourtering [sic] my son & I. His step dad is in here w/ me to make sure I don't talk We need help asap!!! My mother lives in Lexington but he is home with my 2 kids. I'm scared for our lives and there is no way to call 911.

The note was introduced and entered as an exhibit to the jury. The Cabinet employee told her supervisor; the Cabinet then contacted the police. Law enforcement and Cabinet employees went to the residence where Thompson and Willoughby were living with their children (A.G., Willoughby's son, and a daughter, the biological child of both Thompson and Willoughby), and Thompson's mother and stepfather.

When officials knocked at the residence, Thompson's mother yelled back to him, "Phillip, Amber's went and told on you." Thompson fled through a window in the rear of the residence. Cabinet officials located the children and took them into custody. They were first transported to the Cabinet office but

2

after viewing the extent of A.G.'s injuries, A.G. was immediately transported to the hospital. A.G. presented at the hospital with multiple bruises, burns, most severely to the genitals, and an abdominal distension. He was transferred to University of Kentucky's Children's Hospital for further treatment.

A.G. was taken to the operating room. A.G. had scarring in his belly and an area of the small intestine had a complete transection, caused by an excessive amount of force applied to the area. A.G. had to have an open surgery to repair the damage. One of the doctors testified there had to be a direct blow to the area to produce such a life-threatening injury. A.G. was in the hospital until December 27, 2014.

Both Thompson and Willoughby were charged with the abuse and assault of A.G. Willoughby ultimately entered a guilty plea and testified against Thompson at trial. According to Willoughby, in the two weeks leading to the incident at the Cabinet office, Thompson had tortured and abused her and A.G. She stated he forced her to do drugs and repeatedly harmed A.G. He began with spanking him, then using a switch on him, and then proceeded to harm him in more cruel ways. He would force him to squat against the wall for long periods of time and hit him on the head with a rock if he protested in any way. He also warmed a piece of metal with a lighter and applied the metal to A.G.'s body, including his genital area, to burn him. According to Willoughby, when A.G. cried in protest, Thompson would laugh. Willoughby stated she was forcibly restrained at times from interfering or beaten in response to any attempt she made to stop Thompson from harming A.G.

3

After the evidence was presented, the jury convicted Thompson of one count of first-degree assault and one count of first-degree criminal abuse. The jury recommended a sentence of ten years for criminal abuse and twenty years for assault. They recommended the sentences be served consecutively for a total of thirty years in prison.

## II. ANALYSIS

### A. INSTRUCTING THE JURY ON FIRST-DEGREE ASSAULT AND FIRST-DEGREE CRIMINAL ABUSE DOES NOT VIOLATE THE PROSCRIPTION AGAINST DOUBLE JEOPARDY.

Thompson first argues error in the jury's instructions on both first-degree assault and first-degree criminal abuse. Thompson alleges that submission to the jury on both of these charges violates double jeopardy under the *Blockburger* test. However, under our case law, it is clear that there is no double jeopardy violation for these two crimes.

Kentucky Revised Statute (KRS) 508.010 states:

(1) A person is guilty of assault in the first degree when:

   a) He intentionally causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument; or

   b) Under circumstances manifesting extreme indifference to the value of human life he wantonly engages in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person.

KRS 508.100 states:

4

(1) A person is guilty of criminal abuse in the first degree when he intentionally abuses another person or permits another person of whom he has actual custody to be abused and thereby:

    a) Causes serious physical injury; or

    b) Places him in a situation that may cause him serious physical injury; or

    c) Causes torture, cruel confinement or cruel punishment;

to a person twelve (12) years of age or less, or who is physically helpless or mentally helpless.

The United States Supreme Court enunciated what is now known as the *Blockburger* test in *Blockburger v. United States*, 284 U.S. 299 (1932). The Court held that "[a] single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." *Blockburger*, 284 U.S. at 304 (citation omitted). This test has been codified by Kentucky's General Assembly in KRS 505.020. *See Polk v. Commonwealth*, 679 S.W.2d 231, 233 (Ky. 1984) ("This statute is simply a codification of the rule laid down in *Blockburger* ..."). Relevantly here, KRS 505.020 prohibits conviction for more than one offense out of a "single course of conduct," KRS 505.020(1), when "[o]ne offense is included in the other[.]" KRS 505.020(1)(a). An offense is included in another when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]"

5

KRS 505.020(2)(a). If "a conviction for each offense require[s] proof of ... separate facts not required in order to prove the other," convictions for both offenses will not violate the double jeopardy clause of either the Kentucky or federal Constitutions. *See Polk*, 679 S.W.2d at 234.

Although in an unpublished opinion, this Court has specifically addressed whether convictions for both first-degree criminal abuse and first-degree assault violate the constitutional prohibition against multiple punishments for the same conduct. In *Beasley v. Commonwealth*, this Court stated that although the defendant did "not raise double jeopardy" as an issue, "it would not bar his convictions in this case because each charge—First-Degree Criminal Abuse and First-Degree Assault—requires proof of at least one fact which the other one does not." No. 2001-SC-0539-MR, 2003 WL 22974888, *7 (Ky. Dec. 18, 2003) (citing *Commonwealth v. Burge*, 947 S.W.2d 805, 809 (Ky. 1996)). The Court further explained:

> For First-Degree Criminal Abuse, the Commonwealth was required to prove that [the victim] was twelve (12) years of age or less, which is not an element of First-Degree Assault, and for First-Degree Assault, the Commonwealth was required to show that [the defendant]'s conduct created a grave risk of death, which is not a requirement for First-Degree Criminal Abuse.

*Id.* We find the analysis identical to the issue presented by Thompson. As in *Beasley*, the Commonwealth had to prove different elements for each of these charges. For criminal abuse, the victim's age was an essential element. For first-degree assault, the Commonwealth had to enter evidence as to the "extreme indifference to the value of human life" of Thompson's conduct.

6

Additionally, we see no clear legislative intent to prohibit the prosecution of both these crimes for the same conduct; as such, the analysis under KRS 505.020 and *Blockburger* controls our holding. *See McNeil v. Commonwealth,* 468 S.W.3d 858, 869 (Ky. 2015) ("[I]f the General Assembly's intent is not otherwise plain, a strict application of *Blockburger* is the appropriate method to resolve KRS 505.020(1)(a) double jeopardy/included offense claims."). Thus, we hold that Thompson's constitutional rights against double jeopardy were not impugned by his convictions for both first-degree assault and first-degree criminal abuse.

## B. THE INSTRUCTION FOR FIRST-DEGREE CRIMINAL ABUSE VIOLATES THIS COURT'S PRECEDENT ON UNANIMOUS VERDICTS.

Thompson also alleges that the instruction for first-degree criminal abuse violated his right to a unanimous verdict under this Court's case law. Thompson admits that he failed to adequately preserve this issue and therefore requests palpable error review pursuant to Kentucky Rule of Criminal Procedure (RCr) 10.26. If the instruction did violate the right to a unanimous verdict, this Court has held such error to be palpable, requiring reversal. *See Martin v. Commonwealth,* 456 S.W.3d 1, 8-9 (Ky. 2015) (citing *Johnson v. Commonwealth,* 405 S.W.3d 439, 457 (Ky. 2013) and *Kingrey v. Commonwealth,* 396 S.W.3d 824, 831-32 (Ky. 2013)). Because the instruction on criminal abuse did not specify the conduct which would substantiate the charge, the instructions were insufficient to protect Thompson's right to a unanimous verdict on this particular count. As such, we must vacate the

7

conviction for first-degree criminal abuse and remand to the circuit court for further proceedings.

Instruction No. 3 to the jury on first-degree criminal abuse stated:

You will find the Defendant guilty of First-Degree Criminal Abuse under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about December 6, 2014, and before the finding of the Indictment herein, he intentionally abused [A.G.];

B. That he hereby caused a serious physical injury to [A.G.];

AND

C. That [A.G.] was at that time 12 years of age or less.

Instruction No. 2 on first-degree assault specified that serious physical injury occurred from Thompson "kicking and striking [A.G.] in the abdomen." Unlike that instruction, the first-degree criminal abuse instruction failed to specify what particular conduct was the "abuse" described and inflicted upon A.G.

Willoughby provided the majority of testimony as to what occurred to A.G. on or about December 6, 2014. However, in her testimony she described several acts of violence committed upon A.G., that "all happened December the 6th." Willoughby described Thompson: heating a metal piece on a lighter and burning A.G. with the metal; burning A.G.'s genital area; and using a switch on A.G. causing bruises and cuts on A.G.'s body. Willoughby also described Thompson hitting A.G. in the head with a rock, kicking him forcefully in the stomach, and forcing him to squat against the wall for long periods of time,

although it is unclear from her testimony whether these incidents were included in those that occurred on December 6.

The situation presented by Thompson's case is strikingly similar to what we addressed in *Johnson v. Commonwealth*, 405 S.W.3d 439 (Ky. 2013). In that case, the defendant was charged with criminal abuse, first degree. *Id.* at 447-48. The instruction did not specify the conduct leading to the "serious physical injury" of the child and the proof presented at trial presented at least two incidents of abuse that would fit the description. *Id.* at 448-49. Given the facts, we specifically held "that such a scenario—a general jury verdict based on an instruction including two or more separate instances of a criminal offense, whether explicitly stated in the instruction or based on the proof— violates the requirement of a unanimous verdict." *Id.* at 449.

The situation presents "an instruction that includes multiple crimes but directs only one conviction." *Id.* at 455. "Such instructions make it possible that some of the jurors may vote for the first crime, and some may vote for the second, with all agreeing that the defendant committed a crime." *Id.* In such instances, "[w]e have no certainty that twelve people found the defendant guilty of the same instance of the crime." *Id.* Such an error is "of a constitutional magnitude." *Id.* Additionally, such error "is jurisprudentially intolerable" making it "palpable" and "requir[ing] reversal." *Id.* at 457. In other words, "we cannot be sure that the jurors were unanimous in concluding the defendant committed a single act satisfying the instruction." *Martin*, 456 S.W.3d at 7. "[T]he jury's verdict only reflects their unanimous view that the defendant

9

committed the crime, without necessarily resulting in a unanimous conclusion that the defendant committed a single criminal act beyond a reasonable doubt." *Id.* In such cases, "the jury fails to reach a unanimous verdict." *Id.*

Given this precedent and the instructions presented here, we must hold that the jury instruction on first-degree criminal abuse failed to protect Thompson's right to a unanimous verdict on that count. The instruction did not specify the conduct leading to the charge. Willoughby testified about multiple acts of abuse that led to physical injuries that could have been deemed serious by the jury. Without such specificity, we cannot determine that the jury reached a unanimous verdict. Because of the "constitutional magnitude" of such error, we must hold the error as palpable, requiring reversal. Despite the Commonwealth's assertion that such error was invited, such a holding would undermine our previous holdings rendering non-unanimous instructions as amounting to palpable error. Inadequate preservation of an error is the exact situation in which the Court searches for palpable errors. Here, the defense incorrectly acquiesced to the instructions provided by the trial court. Rather than invited error, it was an unpreserved error. This Court has determined such an unpreserved error is, in fact, palpable, and leads to manifest injustice. As such, we vacate Thompson's conviction for first-degree criminal abuse and remand to the trial court for further proceedings on that count.

We would also remind the practicing bench and bar of this ongoing problem. As we recognized in *Johnson*, there are multiple solutions to prevent

10

such a reversible error. Prosecutors can "charge each crime in a separate count." *Johnson*, 405 S.W.3d at 455. The Commonwealth can "elect before trial which instance to prosecute and then be careful to limit the proof at trial to that single instance of the crime." *Id.* at 456. The instructions could clearly specify "one criminal act that has been proven at trial." *Id.* "[O]r the jury could be given a specific unanimity instruction, ... requiring its members to agree unanimously which criminal act on which they are convicting." *Id.* We would once again encourage practitioners to utilize these options to avoid reversal of otherwise valid prosecutions.

## C. THERE WAS NO PALPABLE ERROR IN WILLOUGHBY'S QUESTIONING.

Although we are vacating the criminal abuse conviction, we must address Thompson's other arguments to review for any error in the assault conviction that would require reversal. Thompson alleges error resulted when the Commonwealth questioned Willoughby about the punishment she wanted to see happen to Thompson for the abuse of her son. Thompson admits the error is unpreserved but argues that the error resulted in manifest injustice under RCr 10.26. Under the rule, a palpable error that "affects the substantial rights of a party" may be raised and entitle the defendant to relief, even if improperly or inadequately preserved. An error is palpable if it is "easily perceptible, plain, obvious and readily noticeable." *Wise v. Commonwealth*, 422 S.W.3d 262, 276 (Ky. 2013) (quoting *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006)). "To find manifest injustice, the reviewing court must

11

conclude that the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be 'shocking or jurisprudentially intolerable.'" *Conrad v. Commonwealth*, 534 S.W.3d 779, 783 (Ky. 2017) (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006)).

The testimony in question occurred on re-direct examination during Willoughby's testimony:

| Commonwealth(CW): | Does anything in your mind excuse what's been done to [A.G.]? |
|---|---|
| Willoughby: | What do you mean sir? |
| CW: | What do you want to see happen to Phillip over these injuries? |
| Willoughby: | I'd like to see him sit in jail for a long time so my son can feel safe. |

This particular testimony lasted mere seconds and Willoughby's entire testimony ended a few minutes later.

"The prohibition of victim-impact evidence during the criminal-responsibility phase of trial is deeply rooted in both our precedent and Kentucky statutory law." *Roe v. Commonwealth*, 493 S.W.3d 814, 823 (Ky. 2015), *as modified* (May 5, 2016), *as corrected* (Nov. 14, 2016). "[T]he Commonwealth may introduce evidence, after a determination of guilt, relevant to the impact of the crime upon the victim, including any physical, psychological, or financial harm." *Id.* However, this Court has "cautioned against the use of this type of evidence when determining guilt because it is 'generally intended to arouse sympathy for the families of the victims' and is

12

'largely irrelevant to the issue of guilt or innocence.'" *Id.* (citing *Bennett v. Commonwealth*, 978 S.W.2d 322, 324-36 (Ky. 1998)). "[T]he rule is intended to prevent emotional convictions." *Roe*, 493 S.W.3d at 823.

Furthermore, this Court has recently determined that "sentencing recommendations made by the victim and victims' families in [a non-capital case] were improperly admitted." *Hilton v. Commonwealth*, 539 S.W.3d 1, 18-19 (Ky. 2018). In *Hilton*, the statements were made during the *penalty* phase of the trial. *Id.* at 18. Even there, the Court held that allowing the victims to recommend punishment for the defendant would be "too broad a reading of the statute" allowing victim-impact evidence. *Id.* at 19. The Court did, however, determine there was no *reversible* error creating "any substantial effect upon his sentence." *Id.* Applying the harmless error test, the Court held "that the jury's verdict was not swayed by the testimony ..." of the family recommending a sentence. *Id.* This Court did take the opportunity to remind prosecutors to "avoid this type of evidence." *Id.* "[W]hile the facts of Hilton's case lead us to conclude that the admission of this evidence was error, but not reversible, under different circumstances reversal could well be the appropriate remedy." *Id.*

Thus, we are faced with an amalgamation of two issues: potential victim-impact evidence during a guilt phase *and* a victim's recommendation for a sentence. To obfuscate the issue further, we must review this issue under a palpable error analysis as Thompson failed to object to this question at the time of trial. Additionally, the comment was fleeting in an otherwise

disturbingly descriptive testimony about the abuse inflicted upon this young child. The testimony was clearly in error. A victim should not make such a recommendation of a sentence and it should definitely not have occurred during the guilt phase of the trial.

However, we must view this error through the lens of RCr 10.26. "Ultimately, '[m]anifest injustice is found if the error seriously affected the fairness, integrity, or public reputation of the proceeding.'" *Wise*, 422 S.W.3d at 276 (quoting *Kingrey v. Commonwealth*, 396 S.W.3d 824, 831 (Ky. 2013) (quoting *McGuire v. Commonwealth*, 368 S.W.3d 100, 112 (Ky. 2012))). We cannot say that this fleeting comment "seriously affected" Thompson's substantial rights. The comment was brief; the prosecution did not call undue attention to the comment. The evidence against Thompson was significant; the injuries to the child were alarming. Although this comment was in error, we are unwilling to hold the error as being palpable and requiring reversal. However, we must once again take the opportunity to caution prosecutors to use a discerning eye when asking questions that could cross this line. Although we once again, as in *Roe*, find the evidence as not requiring reversal, such evidence could easily become palpable error. Thus, it is up to prosecutors to guard that line with caution and restraint.

### D. THERE WAS NO PALPABLE ERROR IN TROOPER ALLEN'S QUESTIONING.

The Commonwealth called Trooper Mark Allen with the Kentucky State Police as a witness. Trooper Allen interviewed Thompson regarding the allegations involving A.G. Through Trooper Allen, the Commonwealth

14

introduced and played Thompson's interview for the jury. Defense counsel approached after the Commonwealth had started playing the interview and informed the trial court that Trooper Allen, on the recording, had stated that Thompson's mother was afraid of him. Defense counsel objected to that statement being introduced as hearsay and she would be unable to cross the mother on that statement. The Commonwealth stated it did plan on questioning the mother at some point but defense counsel argued the statement was still hearsay at that time on the interview. Both parties agreed that if the statement came in and Thompson's mother did not testify, then there would be a mistrial. The Commonwealth also stated it would attempt to stop the audio before the statement came up in the recording.

The Commonwealth continued to play the recording while Trooper Allen was on the witness stand. It seemed the Commonwealth attempted to end the recording early but, before the recording was cut off, the following exchange could be heard:

Allen:      She's scared of you.

Thompson: My mother?

Allen:      Yeah, she said she's –

At this time, the Commonwealth ended the audio recording. Defense counsel reiterated the point that this could lead to a mistrial. The parties then moved on to other issues.

Thompson's mother, Priscilla Riley, did testify the next morning after being called by the Commonwealth. Riley testified about when Thompson

15

brought Willoughby, A.G., and Thompson and Willoughby's daughter to live in her home. She testified that she suspected A.G. was being abused but stated at trial that she suspected Willoughby of harming A.G. and told her to stop. Riley explained about a social worker and police officers coming to investigate on December 8, 2014 and taking the children. She confirmed that she had yelled at Thompson, "Amber told on you" after the officers came to the door and then Thompson fled out the back window. She also confirmed that she had told officers that Thompson had broken things in her home a few days before this incident and that she had told the officers she was scared of Thompson.

We must first note that this issue is not properly preserved. Defense counsel did object that Riley's statements would be hearsay but conditioned further objection on whether Riley testified. Riley did testify. Thompson did not object during Riley's testimony about these remarks nor did he renew a motion for mistrial. As such, this error is unpreserved and subject only to palpable error review pursuant to RCr 10.26. Additionally, at trial, Thompson argued the statement in question was hearsay. On appeal, Thompson argues the evidence about Riley's mother being scared of Thompson (introduced through Trooper Allen) was inadmissible character evidence under KRE 403 and 404. Thompson now seems to argue that evidence his mother was afraid of him *must* lead to the conclusion that he committed numerous other bad acts and *must* have induced the jury to punish him for these other crimes.

If Riley's actual statements had been introduced through Trooper Allen, the issue would be preserved by Thompson's hearsay objection. However,

16

Riley's *statements* were not introduced in the recording. The audio was cut *before* what she had said was relayed by Trooper Allen. Thus, what we must review is the admissibility, through Trooper Allen, of Riley's alleged fear of Thompson. It is questionable whether this generalized characterization would even fall within the purview of KRE 404(b) of other wrongs. There was no evidence of a specific act in this recording, there was no specific "wrong" addressed in the statement. In *Springer v. Commonwealth*, this Court held that "[e]vidence of immorality would not tend to prove a propensity or predisposition to commit homicide. Thus, the evidence must be tested by the general rule of relevancy[.]" 998 S.W.2d 439, 449 (Ky. 1999). Rather than an evidence of other wrongs, the generalized statement of fear is more akin to evidence of immorality, as in *Springer*. As such, KRE 404 simply has no relevance to this particular evidence.

KRE 403, of course, applies to all evidence introduced at trial. Under the rule, "evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice." Here, the probative value of this evidence is quite low. Riley's fear of her son could have potential relevance in this case, *i.e.* explaining her failure to report alleged abuse or lie for her son, but those reasons were not explained by the Commonwealth. This Court cannot just assume facts to justify admissibility of evidence. With the argument before us, the relevance of this statement is circumspect at best. On the other hand, prejudice implicit in a mother's fear of her own child, on trial

17

for physical abuse, would be highly prejudicial. Therefore, this statement was admitted in error.

But, again, this error was unpreserved. We must determine whether the error was palpable, leading to manifest injustice. Based on our review, we cannot say such error requires reversal. Even if the issue had been properly preserved, any error here was harmless. "A non-constitutional evidentiary error may be deemed harmless, the United States Supreme Court has explained, if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error." *Winstead v. Commonwealth*, 283 S.W.3d 678, 688-89 (Ky. 2009) (citing *Kotteakos v. United States*, 328 U.S. 750 (1946)). Riley testified at trial. From her own lips, the jury heard that she was afraid of her own son. We cannot hold the jury was substantially swayed by the recorded statement submitted in error when Riley herself testified as to the same fact. The error was harmless, and therefore, clearly not palpable.

Additionally, the trial court admonished the jury about the officer's statements in the recorded statement. The trial court told the jury not to consider any statements made by the officers on the recorded interview as any kind of proof against Thompson. "A jury is presumed to follow an admonition to disregard evidence and the admonition thus cures any error." *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003) (citing *Mills v. Commonwealth*, 996 S.W.2d 473, 485 (Ky. 1999)). Any error was deemed cured by the trial court's admonition. No error here requires reversing Thompson's assault conviction.

18

### III.  CONCLUSION

For the foregoing reasons, we vacate Thompson's conviction for first-degree criminal abuse and remand to Clay Circuit Court for further proceedings.  On Thompson's conviction for first-degree assault, we affirm the judgment of Clay Circuit Court.

All Sitting.  Minton, C.J.; Hughes, Venters and VanMeter, JJ., concur. Keller, J., concurs in part and dissents in part by separate opinion which Cunningham and Wright, JJ., join.

KELLER, J., CONCURRING IN PART AND DISSENTING IN PART:  I respectfully dissent from the majority opinion's analysis of the alleged unanimity error.  I concur in the remainder of the opinion.  I believe this case, once again, delves further into a court-made conundrum regarding the unanimity of our juries in criminal cases.  I also find that this Court has too broadly defined palpable error; I believe the situation presented here, even if error, could be considered harmless or subject to an invited error analysis.

### THE EVOLUTION OF THE UNANIMITY PROBLEM

There is no requirement in Section 7 of the Kentucky Constitution, RCr 9.82, or KRS 29A.280 that all findings of fact be unanimous or that particular facts must be agreed upon.  Instead, the rule merely requires that the verdict itself must be unanimous.  But, our Court has been remiss in making this distinction.

In *Wells v. Commonwealth*, in 1978, this Court recognized that multiple-theory instructions did not run afoul of the unanimous verdict requirement.

19

Citing to a New York case, the Court quoted, "It is not necessary that a jury, in order to find a verdict, should concur in a single view of the transaction disclosed by the evidence. If the conclusion may be justified upon either of two interpretations of the evidence, the verdict *can not* [*sic*] *be impeached by showing that a part of the jury proceeded upon one interpretation and part upon the other ...* " *Wells v. Commonwealth,* 561 S.W.2d 85, 88 (Ky. 1978) (quoting *People v. Sullivan,* 65 N.E. 989, 990 (N.Y. 1903)) (emphasis added). The Court, upon this principle, held that "it was not necessary that all jurors should agree in the determination that there was a deliberate and premeditated design to take the life of the deceased, or in the conclusion that the defendant was at the time engaged in the commission of a felony, or an attempt to commit one." *Wells,* 561 S.W.2d at 88. Instead, "[i]t was sufficient that each juror was convinced beyond a reasonable doubt that the defendant had committed the crime ... as ... defined by statute." *Id.* The Court went even further to establish this holding: "We hold that a verdict can not [*sic*] be successfully attacked upon the ground that the jurors could have believed either of two theories of the case where both interpretations are supported by the evidence and the proof of either beyond a reasonable doubt constitutes the same offense." *Id.*

For decades, the Court held steadfast to this constant: when both theories of a crime are supported by the evidence, multiple-theory instructions are sufficiently protective of the right to a unanimous verdict. *See Harris v. Commonwealth,* 793 S.W.2d 802 (Ky. 1990) (overruled on other grounds by *St.*

20

*Clair v. Commonwealth*, 451 S.W.3d 597 (Ky. 2014)); *Davis v. Commonwealth*, 967 S.W.2d 574 (Ky. 1998). In contrast, when one of the alternative theories is unsupported by the evidence, then these multiple-theory instructions become a unanimity issue. *See Boulder v. Commonwealth*, 619 S.W.2d 615 (Ky. 1980) (overruled on other grounds by *Dale v. Commonwealth*, 715 S.W.2d 227 (Ky. 1986)); *Hayes v. Commonwealth*, 625 S.W.2d 583 (Ky. 1981); *Burnett v. Commonwealth*, 31 S.W.3d 878 (Ky. 2000) (overruled on other grounds by *Travis v. Commonwealth*, 327 S.W.3d 456 (Ky. 2010)); *Commonwealth v. Whitmore*, 92 S.W.3d 76 (Ky. 2002).

Yet beginning within the past fifteen years, this Court has broadened the scope of the meaning of a unanimous verdict. Prior to these cases, a unanimous verdict meant just that: a unanimous *verdict*. Not a unanimous finding of individual facts nor a unanimous finding even as to the method of the crime or particular involvement of the defendant. In *Burnett*, this Court stated that "the Commonwealth has to show that it has met its burden of proof under all of the alternate theories presented by the instruction. Once that is shown, it becomes **irrelevant** which theory each individual juror believed." 31 S.W.3d at 883 (emphasis added). In *Caudill v. Commonwealth*, two defendants were each charged as principal or accomplice in the victim's murder. 120 S.W.3d 635, 666 (Ky. 2003). The jury was permitted, if they could not agree which defendant was principal and which was accomplice, to find them guilty as "principal or accomplice." *Id.* The Court specifically held that "[t]he unanimity requirement was not violated because both theories were supported

21

by the evidence." *Id.* (citing to *Halvorsen v. Commonwealth*, 730 S.W.2d 921, 925 (Ky. 1986); *Ice v. Commonwealth*, 667 S.W.2d 671, 677 (Ky. 1984); *Wells*, 561 S.W.2d at 88.

In *Johnson v. Commonwealth*, the defendant was charged with one count of possession of drug paraphernalia, but the evidence proved that she had possession of multiple paraphernalia items. 105 S.W.3d 430, 442-43 (Ky. 2003). The jury instruction did not specify to which item it specifically referred. *Id.* at 442. This Court specifically stated that "[t]he fact that the Commonwealth presented evidence of several different items of paraphernalia, or **even that the jurors might have based their verdict on different items of paraphernalia**, does not jeopardize Appellant's right to a unanimous verdict in the absence of a failure of proof as to one of the items of paraphernalia." *Id.* at 443 (emphasis added).

However, the Court, in 2008, began a shift. In *Bell v. Commonwealth*, the victim, K.T., testified that the defendant began sexually abusing her when she was in second grade, for a period of three years. 245 S.W.3d 738, 740 (Ky. 2008) (overruled on issue of the curative power of closing argument as to erroneous instructions by *Harp v. Commonwealth*, 266 S.W.3d 813 (Ky. 2008)). Although K.T. testified that the abuse occurred "most nights," the defendant was charged with only five counts of first-degree rape, with the lesser included offense of first-degree sexual abuse, and five counts of sodomy first-degree. *Id.* at 740-41. The jury instructions did not include any distinguishing characteristics for the counts. *Id.* at 743. Defendant was found guilty of five

22

counts of sexual abuse first-degree and only one count of sodomy first-degree. *Id.* at 741.

The Court stated that "[w]hen the evidence is sufficient to support multiple counts of the same offense, the jury instructions must be tailored to the testimony in order to differentiate each count from the others." *Id.* at 744. The Court found this reversible error as to only the sodomy instruction. *Id.* "Because the jury ultimately found Bell guilty of all five counts of sexual abuse, it can be rationally and fairly deduced that each juror believed Bell was guilty of the five distinct incidents identified by the Commonwealth." *Id.* However, as to the sodomy charge, the Court shifted its prior language regarding a jury's ability to believe different theories of the case: "it must be evident and clear from the instructions and verdict form that the jury agreed, not only that Bell committed one count of sodomy, but also *exactly* which incident they all believed occurred." *Id* (emphasis original). Now, here the issue was correctly reversed as Bell had no meaningful appellate review, as the facts leading to his convicted charge were unknown and he had no realistic knowledge upon which to base his appeal. *See id.* However, the Court's language began the troubling shift in our unanimity holdings: that the jury must all believe exactly the same set of facts leading to its conviction.

In *Harp v. Commonwealth* that same year, this Court further refined this new line of thinking in unanimity cases. Defendant sexually abused his girlfriend's four-year-old daughter, B.B., for over two years from December 2003 to February 2006. *Harp*, 266 S.W.3d at 816-17. The jury was charged

23

with instructions for seven counts of sexual abuse first-degree, one count of sodomy first-degree, and one count of indecent exposure. *Id.* at 817. The sexual abuse instructions were identical and factually undistinguished, all giving the same time-period as described. *Id.* The Court held that "in a case involving multiple counts of the same offense, a trial court is obliged to include some sort of identifying characteristic in each instruction that will require the jury to determine whether it is satisfied from the evidence the existence of facts proving that each of the separately charged offenses occurred." *Id.* at 818. The Court also held that such error, if preserved, is reversible. *Id.* Yet, after this case was published, the Court continued to hold both that these kinds of undistinguished instructions in multiple count cases were error, *see Miller v. Commonwealth*, 283 S.W.3d 690 (Ky. 2009), while still finding the multiple-theory instructions, if both theories are supported by evidence, are adequate. *See Beaumont v. Commonwealth*, 295 S.W.3d 60 (Ky. 2009), *Jones v. Commonwealth*, 331 S.W.3d 249 (Ky. 2011).

In *Applegate v. Commonwealth*, H.A. testified that her father sexually abused her for over seven years, beginning when she was five years old. 299 S.W.3d 266, 268 (Ky. 2009). Although H.A. testified that this happened continually during this period, defendant was charged with only one count each of rape first-degree, sodomy first-degree, and incest. Justice Schroder wrote for the Court, emphasizing that "[i]t would be wholly unreasonable to expect a child of such tender years to remember specific dates, especially given the long time period over which the abuse occurred." *Id.* at 270 (quoting *Farler*

24

*v. Commonwealth*, 880 S.W.2d 882, 886 (Ky. App. 1994)). The Court acknowledged the ruling from *Bell* and *Harp* that "when an indictment charges a defendant with the same offense *multiple* times, the jury instructions must include language to factually distinguish one offense from another." *Applegate*, 299 S.W.3d at 271 (citing *Harp*, 266 S.W.3d at 816). However, the Court cited to the same decision on the issue of one sodomy instruction, stating "[o]ur precedent does not support a conclusion that a trial court is required to include any identifying evidentiary detail in instructions in which a defendant is charged **with only one count of an offense**." *Applegate*, 299 S.W.3d at 272 (quoting *Harp*, 266 S.W.3d at 821, n. 25) (emphasis added). Defendant's convictions were upheld as he "was not charged with the same offense multiple times. Rather, he was charged with one count of rape, one count of sodomy, and one count of incest." *Applegate*, 299 S.W.3d at 272.

Unfortunately, this Court's precedent went one step further. In *Johnson v. Commonwealth*, 405 S.W.3d 439 (Ky. 2013), the Court specifically addressed a single instruction for one count of a crime when the evidence at trial presented proof of more than one instance that would, on its own, meet the requirements of the instruction. The Court held "that such a scenario—a general jury verdict based on an instruction including two or more separate instances of a criminal offense, whether explicitly stated in the instruction or based on the proof—violates the requirement of a unanimous verdict." *Johnson*, 405 S.W.3d at 449. Justice Noble, in a well-reasoned and thoughtful opinion, compared the situation to the federally condemned problem of

25

duplicitous instructions. *Id.* 453-54. In such instructions, "a duplicitous count includes in a single count what must be charged in multiple counts." *Id.* at 454. Federal courts reject such duplicitous indictments as "a general verdict of guilty does not disclose whether the jury found the defendant guilty of one crime or both ..." *Id.* (quoting *Johnson v. United States*, 398 A.2d 354, 369-70 (D.C. 1979) (quoting *United States v. Starks*, 515 F.2d 112, 116-17 (3d Cir. 1975))). While recognizing that the federal unanimity laws are not applicable to the states, the majority found the logic of these holdings persuasive as to Kentucky's unanimity requirement. *Johnson*, 405 S.W.3d at 455. Justice Noble crafted a hypothetical to explain the difference:

> An instruction that includes multiple crimes but directs only one conviction ... is like giving directions to a McDonald's on the east side of town to half a group of travelers, and directions to one on the west side of town to the other half, despite a rule that requires all the travelers to go to the same restaurant. Both groups arrive at *a* McDonald's, but not all the travelers are in the same place.

*Id.* According to the majority's logic, "[t]he unanimity requirement mandates that jurors end up in the same place." *Id.* While the jury "appear[s] to end up in the same place in order to convict[,] ... that appearance is illusory because we can never know whether the jurors are indeed in the same place." *Id.*

The hypothetical is persuasive. However, it misstates the circumstances of this issue. It is not that the travelers are ending in two different places. Instead, six travelers take the expressway and six travelers take country roads; nonetheless, the twelve travelers all meet at the exact same location in the end. Once again, we ask the wrong question. It is not whether the jurors all took

26

the same path to reach the verdict; it is whether they ended at the same point unanimously. As Justice Cunningham stated, "[w]e are requiring juries to be unanimous on matters that the unanimous verdict requirement never anticipated." *Id.* at 461. Our Constitution and our prior case law has never required that juries unanimously agree on a particular set of facts. In fact, our case law has held just the opposite. *See Wells*, 561 S.W.2d at 88. Rather, it is the unanimity of the *verdict* that is integral to our analysis.

## UNANIMITY VS. REVIEWABILITY

Why is there a difference between these two treatments, between multiple count instructions and one count with multiple acts? I would cite to Justice Cunningham's dissent in *Johnson v. Commonwealth.* The unanimity issue as described in these sexual abuse cases is not actually a unanimity issue. Instead, it is a reviewability issue. In many of these cases where a defendant is found guilty of multiple counts without distinguishing characteristics, "the reviewing court cannot be certain which offense or offenses were committed—not whether the jury voted unanimously. So it is not a unanimity issue. It is a review problem." *Johnson*, 405 S.W.3d at 460 (Cunningham, J., concurring in part and dissenting in part). This review problem, in turn, violates a defendant's due process right to a meaningful review of his conviction. This important distinction draws the line for why our cases have been so conflicted. We are simply asking the wrong question. The question is not whether the jury all agreed to the exact same act to reach its verdict. The question is, instead, are we able to adequately review that verdict?

27

When only one offense has been charged, as in *Applegate,* it is easily reviewable as all the evidence was integral to prosecution of that one count. If there are multiple counts and the jury returns guilty verdicts on all, as in the sexual abuse counts in *Bell,* once again, reviewability is not an issue. However, when there are multiple counts and only some return guilty verdicts without any distinguishing characteristics in the instructions, like the sodomy counts in *Bell,* then reviewability becomes an integral issue. If the Court cannot determine what the defendant was convicted of, then that defendant has lost all means to any effective appeal. Thus, his due process rights are implicated by this lack of meaningful review. However, this does not necessarily mean that his verdict was not unanimous.

I completely concur with this Court's precedent that instructions with multiple counts without distinguishing characteristics violate a defendant's constitutional rights. I believe that our phrasing and characterization of this issue is, however, somewhat confusing; it is the right to appellate review that has been violated, rather than the right to a unanimous verdict. However, I believe that the scope of this violation should be limited to only those undistinguished multiple count cases; I do not believe this Court's precedent broadening the error to single count instructions with multiple act evidence should be upheld.

### RE-EXAMINING THE PURPOSE BEHIND UNANIMITY

I believe these cases should be limited to undistinguished multiple counts because I question the practical distinction between one instruction on

28

multiple instances, where each of these multiple instances is sufficiently proven, and a multiple-theory instruction. If we do not require a jury to unanimously decide whether a murder was intentional or wanton under old statutes, or a principal or accomplice, or whether the murder weapon was a knife or a sword, etc., then why must all twelve jurors agree as to only one particular instance of abuse? There is no practical difference between these scenarios. Not only is this distinction without legal basis, but post *Johnson*, there has been an often-insurmountable hurdle created in many sex abuse cases. *See e.g. Kingrey v. Commonwealth*, 396 S.W.3d 824 (Ky. 2013); *Martin v. Commonwealth*, 456 S.W.3d 1 (Ky. 2015); *Ruiz v. Commonwealth*, 471 S.W.3d 675 (Ky. 2015); and *Jenkins v. Commonwealth*, 496 S.W.3d 435 (Ky. 2016). These holdings impress upon prosecutors the need to force victims to testify to unique, identifying characteristics – each incident of abuse and violence against them must have some unique quality which they must remember to an extent beyond reproach upon cross-examination. It is conceivable that, due to the stress or post-traumatic stress of reliving these events, those details could never be recalled. In such cases, must the Commonwealth abandon all prosecution? Yes, a defendant's rights are paramount in a criminal trial. However, this Court has read into the unanimity requirement a new and different standard not guaranteed by our state Constitution.

For all these reasons, I believe that now is our opportunity to overrule *Johnson v. Commonwealth* and the successive line of cases holding the

instructions at issue are reversible error. I would reiterate our prior holdings that, when only one count has been charged, unanimity is not an issue.

## WEAKENING THE PALPABLE ERROR ANALYSIS

The majority of this Court has also determined that the error described here, an allegedly duplicitous instruction leading to a non-unanimous verdict, is palpable error. *See Johnson*, 405 S.W.3d at 457. The Court stated that "this type of error, which violates a defendant's right to a unanimous verdict and also touches on the right to due process, is a fundamental error that is jurisprudentially intolerable." *Id.* The Court determined the error was palpable and required reversal. *Id.* It seems the Court determined, as a bright-line rule, that the alleged error would always be considered palpable. I disagree with this assumption.

As Justice Cunningham stated in his dissent in *Johnson*: "We are watering down our palpable error standard with holdings such as this to the point that it behooves the defense lawyer not to object on jury instructions and just allow the trial court to walk—unwarned—onto the unanimity land mine." *Id.* at 461. This Court has a long history of considering the palpable error standard to be an incredibly high bar. Even when the error was considered palpable and "affect[ed] the substantial rights of a party," relief will only be granted "upon a determination that manifest injustice has resulted from the error." *Commonwealth v. Jones*, 283 S.W.3d 665, 668 (Ky. 2009). Even then:

> An unpreserved error that is both palpable and prejudicial still does not justify relief unless the reviewing court further determines that it has resulted in a manifest injustice, unless in other words, the

30

error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be 'shocking or jurisprudentially intolerable.'

*Id.* at 668 (quoting *Martin*, 207 S.W.3d at 4). Furthermore,

> Under this rule, an error is reversible only if a manifest injustice has resulted from the error. That means that if, upon consideration of the whole case, a substantial possibility does not exist that the result would have been different, the error will be deemed nonprejudicial.

*Martin*, 207 S.W.3d at 3 (quoting *Graves v. Commonwealth*, 17 S.W.3d 858, 864 (Ky. 2000) (quoting *Jackson v. Commonwealth*, 717 S.W.2d 511, 513 (Ky. App. 1986))).

In *Johnson*, Justice Cunningham opined in his dissent that the error, at its worst, was not palpable error. *Johnson*, 405 S.W.3d at 462. He stated:

> In the case before us—in its worse unanimity posture—six people believed Appellant committed first-degree criminal abuse on one date and six believed the offense was committed on a different date, both within the time period of the charge. Nevertheless, a unanimous jury found Appellant guilty of one count of first-degree criminal abuse. Surely, this is not 'palpable error' as we have traditionally envisioned.

*Id.* Similar to the case in *Johnson*, the worst-case scenario here presents a jury divided on which particular incident of abuse was referenced to find Thompson guilty of criminal abuse. I agree with Justice Cunningham that such a situation is not what the palpable error rule intended to prevent.

First, I am disinclined to accept the position that there would have been a different result with different, specific instructions. To prove this, it would have to be shown that some of the abuse Willoughby recounted in her testimony would be insufficient to find guilt beyond a reasonable doubt. This

31

is not the case. Willoughby spoke in depth about the abuse to which A.G. was subjected. Each separate act of abuse leading to severe physical injury was sufficient for the jury to find guilt. If this is the case, then even with separate counts or testimony about only one incident, the result would have been the same.

Second, I do not succumb to the belief that Thompson's case was "shocking or jurisprudentially intolerable." This particular situation does not affront the judicial system as a whole. The prosecution presented valid, credible proof against Thompson that he had cruelly abused a small child. He could have been charged with more counts from the massive amount of abuse A.G. endured. Yet, he was charged with only two counts: assault and criminal abuse. He benefited from this process and system. The jury heard all the evidence and decided, unanimously, that he was guilty. As this does not "threaten[] the integrity of the judicial process," I do not agree that the error here, if any, was palpable to warrant reversal of the criminal abuse conviction.

Because I do not believe every error such as this is palpable, I also find that an invited error analysis would be appropriately applied here. In *Graves v. Commonwealth*, the defendant argued that the jury instructions were in error. 384 S.W.3d 144, 151-52 (Ky. 2012). However, when counsel and the trial court were reviewing and preparing the instructions, defense counsel specifically stated, "I'll go with this instruction, Judge." *Id.* at 152. This Court held that the defendant had "not only failed to preserve the error, he invited the error by affirmatively agreeing to the defective instruction." *Id.* "Generally, a

32

party is estopped from asserting an invited error on appeal." *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 37 (Ky. 2011) (citing *Gray v. Commonwealth*, 203 S.W.3d 679 (Ky. 2006)). "Quisenberry's express representation to the trial court that the evidence ... was sufficient, waived his right to claim on appeal that it was not." *Quisenberry*, 336 S.W.3d at 38. Here, defense counsel also specifically agreed to the sufficiency of the jury instructions. Therefore, this is a situation where invited error could estop Thompson from raising this issue.

For the foregoing reasons, I would affirm, on all issues, the judgment of the Clay Circuit Court.

Cunningham and Wright, JJ., join.

COUNSEL FOR APPELLANT:

Roy Alyette Durham II
Assistant Public Advocate

Kathleen Kallaher Schmidt
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Micah Brandon Roberts
Assistant Attorney General